KAVANAUGH, Circuit Judge,
concurring
I fully join the excellent majority opinion. In response to the strongly worded dissent, I am compelled to add a few comments about my view of the case and, in particular, to underscore the critical importance of accurate instructions to the jury on mens rea requirements.
For me, the vote to reverse Williams’ murder conviction is not a hard call. This case involves a gang’s initiation ritual for bringing new members into the gang. In this instance, a new gang member who underwent the initiation ritual eventually died afterwards. The facts of the case fit the crime of involuntary manslaughter to a T. But the Government charged Williams with second-degree murder, a more serious offense with much heavier punishment. The jury was instructed on both man *20 slaughter and murder, and a critical issue for the jury to decide was whether Williams was guilty of manslaughter or murder. To decide between the two offenses, it was essential for the jury to understand the difference between the two crimes.
On the facts here, the relevant difference between the two crimes related to the defendant’s mens rea. The crime was murder if the defendant was subjectively aware that his conduct created an extreme risk of death or serious bodily injury. The crime was manslaughter, however, if the defendant was not subjectively aware that his conduct created an extreme risk of death or serious bodily injury, even though he should have been aware.
The key issue for the jury to understand in assessing Williams’ mens rea and distinguishing manslaughter from murder was the significance of the victim’s statements during the gang initiation — namely, the victim’s repeated statements during the initiation that he was okay and could continue. During closing argument, the defense counsel correctly told the jury what the law was: that in assessing Williams’ mens rea, the jury could consider the statements that the victim had made during the gang initiation. But the prosecutor, in her rebuttal, said that the defense counsel was wrong about the law. The prosecutor told the jury that it could not consider the statements that the victim had made during the gang initiation. This disagreement was central to the outcome of the case. Considering the victim’s statements likely would lead the jury to convict for manslaughter, not murder. But excluding consideration of those statements likely would lead the jury to convict for murder, not manslaughter.
Faced with this disagreement between the defense counsel and the prosecutor over the key legal issue in the case, the jury would naturally wonder: Who’s right about the law?
The defense counsel’s statement during closing was the correct statement of law. The prosecutor’s statement was an incorrect statement of law. But unfortunately, the ultimate instructions to the jury did not clear up the confusion or definitively resolve the disagreement between the prosecutor and defense. Indeed, if anything, the instructions tended to suggest that the prosecutor’s incorrect view of the law was correct.
I am firmly convinced that the jury did not have a correct understanding of the law and, armed with that misunderstanding, then proceeded to convict Williams of second-degree murder rather than manslaughter. I am unwilling to sweep that under the rug. Williams committed a heinous crime. But as the District Court observed in a post-trial hearing, this “was a close case between second degree murder and manslaughter.” Mot. Hr’g Tr. 27:11-12 (June 3, 2011). And the difference between a manslaughter conviction and a murder conviction in this case is very significant in terms of prison time for Williams. He was sentenced to 22 years in prison for the murder. If he had been convicted of involuntary manslaughter, the statutory maximum sentence would have been 8 years in prison. See 18 U.S.C. § 1112(b).
In a criminal appeal where a mens rea-related jury instruction issue may have made a difference to the conviction and sentence, it is critically important to ensure that the jury had a correct understanding of the relevant law. See United States v. Burwell, 690 F.3d 500, 527 (D.C. Cir. 2012) (Kavanaugh, J., dissenting). That did not happen in this case, in my view. For that reason, I vote to reverse the murder conviction, and I fully join the majority opinion.