UNITED STATES of America,
Plaintiff-Appellee,

v.

Armando LOPEZ–MARTINEZ,
Defendant-Appellant.

No. 82–1646.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 9, 1983.

Decided Aug. 11, 1983.

Rehearing Granted, Opinion Withdrawn,
and Resubmitted Feb. 9, 1984.

Decided Feb. 10, 1984.

John M. Roll, Asst. US Atty., Tucson, Ariz., for plaintiff-appellee.

Frank Leon, Tucson, Ariz., for defendant-appellant.

Before BROWNING, Chief Judge, DU-NIWAY and ALARCON, Circuit Judges.

DUNIWAY, Circuit Judge:

Lopez-Martinez appeals from his conviction on both counts of an indictment. Count 1 charged that he "did knowingly and intentionally import approximately 737.2 grams of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 952 and 960(b)(1)." Count 2 charged that he "did knowingly and intentionally possess with intent to distribute approximately

737.2 grams of heroin, a Schedule I narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)." We affirm.

## I. *The Facts.*

Border Patrol agents arrested Lopez on June 21, 1982, in Nogales, Arizona, just after he had crossed the border from Mexico into the United States through a hole in the border fence. He was carrying a package that contained 737.2 grams of heroin. After waiving his *Miranda* rights, Lopez said that a man had offered to pay him $1,000 to carry the package from Hermosillo, Mexico, to Nogales, a distance of about 160 miles. He said that he did not know what was in the package, but that he had thought that it might be marihuana. The package was small and weighed about a pound and a half.

At the trial, the government introduced, as part of its case-in-chief and over Lopez's objections, evidence of a statement that Lopez had made while under arrest in 1974 for possessing marihuana with intent to distribute it. A former Drug Enforcement Administration agent testified that in 1974 officials had stopped and confiscated two vehicles containing, between them, a total of 680 pounds of marihuana. He also testified:

I asked [Lopez] how much he was to be paid for driving the car containing the marijuana up to Tucson. He stated he was to receive a thousand dollars.

## II. *The Instructions to the Jury.*

The trial court instructed the jury that heroin is a controlled substance, defined the two offenses—importing heroin and possessing heroin with intent to distribute it, and stated, in defining each offense, that Lopez must have "knowingly or intentionally imported . . . heroin" or "knowingly and intentionally possessed heroin . . . in . . . Arizona" and "possessed the heroin with intent to distribute the same." (Instruction 8.)

The court then continued:

The Government is not required to show that the defendant knew that the substance involved was heroin. It is sufficient if the evidence establishes beyond a reasonable doubt that the defendant knowingly and intentionally imported and possessed a controlled substance, with intent to distribute. You are instructed that marijuana is a controlled substance within the meaning of the law. [Instruction 9]

\*    \*    \*    \*    \*    \*

Actual knowledge that the substance the defendant brought into the country was a controlled substance is an essential element of the offense charged. You may not find the defendant guilty of the offenses charged unless you find beyond a reasonable doubt that he knew that what he brought into the country was a controlled substance. It is not sufficient to show that he may have suspected or thought the substance was a controlled substance.

The fact of knowledge, however, may be established by direct or circumstantial evidence, just as any other fact in the case. The prosecutor has the burden of proving beyond a reasonable doubt that the defendant has actual knowledge that what he brought into the country was a controlled substance. It can meet that burden by proving beyond a reasonable doubt that the defendant was aware of the high probability that the substance was a controlled substance and acted with a conscious purpose to avoid learning the truth about the true contents of the package. [Instruction 10]

\*    \*    \*    \*    \*    \*

[As I stated before,] an act is done knowingly if it is done voluntarily or intentionally and not because of mistake or accident or other innocent reason.

The purpose of adding the word "knowingly" was to insure that no one would be convicted for acts done because of an omission or failure to act due to mistake or accident or other innocent reason.

Thus, if you find beyond a reasonable doubt that the defendant was not actual-

ly aware that it was heroin he was carrying when he entered the United States, but that the only reason he did not learn it was because he deliberately chose not to learn for the very purpose of being able to assert his ignorance if he was discovered with the controlled substance in his possession, then you may find that he had the full equivalent of knowledge because his self-imposed ignorance cannot protect him from criminal responsibility.

If, however, you find that the defendant actually believed that what he was carrying was not a controlled substance, then you must acquit the defendant. [Instruction 12]

Instruction 10 was proposed by defense counsel, but the instruction as given differed from counsel's in one important respect. At each place where "a controlled substance" appears in the court's instruction, the word "heroin" appeared in counsel's instruction. The court, in each instance, struck the word "heroin" and inserted the words "a controlled substance."

■ Lopez argues that it was error to give instruction 9 and to modify instruction 10 as the court did. The error is said to be that knowingly and intentionally importing marihuana, or possessing marihuana with intent to distribute, were not the offenses charged by the grand jury, which expressly charged that the drug was heroin. It is reversible error to instruct a trial jury that it can convict a defendant of an offense not charged by the grand jury, even though there is ample evidence that the uncharged offense was committed. *Stirone v. United States,* 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252. There, the grand jury charged violation of the Hobbs Act, 18 U.S.C. § 1951, by extortion, which obstructed the movement of sand into Pennsylvania. The trial judge, on the basis of evidence in the record, told the jury that it could convict if the commerce affected was the movement of steel from Pennsylvania to other states. The Court reversed the conviction, holding that the instruction violated the defendant's right, guaranteed by the Fifth Amendment, "to be tried only on charges presented in an indictment returned by a grand jury." 361 U.S. at 217, 80 S.Ct. at 273. Our own decisions are to the same effect. *United States v. Carlson,* 9 Cir., 1980, 616 F.2d 446; *Howard v. Daggett,* 9 Cir., 1975, 526 F.2d 1388, 1390; *see United States v. Kartman,* 9 Cir., 1969, 417 F.2d 893.

Moreover, importing or possessing heroin and importing or possessing marihuana carry different penalties. Both drugs are listed in Schedule I of 21 U.S.C. § 812. Heroin, a derivative of opium, is a "narcotic drug." 21 U.S.C. § 802(16). Marihuana is not. 21 U.S.C. § 802(15). Thus heroin is listed at Schedule I(b)(10) of § 812, while marihuana is listed at Schedule I(c)(10) of § 812. The penalties prescribed in 21 U.S.C. §§ 841(b)(1)(A) and 960(b)(1) for narcotic drug offenses are far more severe than those for marihuana offenses, prescribed in §§ 841(b)(1)(B) and 960(b)(2). This lends some color to the argument.

We think, however, that Lopez's argument overlooks the framework of the statutes involved. In the case of unlawful importation, the applicable sections cited in the indictment are 21 U.S.C. §§ 952 and 960(b)(1). Section 952(a) makes it "unlawful to import . . . any controlled substance in schedule I . . . of subchapter I of this chapter." Section 812 contains schedule I, in which both heroin and marihuana are listed, along with 79 other controlled substances. Section 960 first lists "Unlawful Acts." Under that heading, it provides, in pertinent part:

(a) Any person who—

(1) contrary to section 952 . . . knowingly or intentionally imports . . . a controlled substance,

.  .  .  .  .

shall be punished as provided in subsection (b) of this section.

It next lists "Penalties." Under that heading, it provides, in pertinent part:

(b)(1) In the case of a violation under subsection (a) of this section with respect to a narcotic drug in schedule I . . ., the person . . . shall be imprisoned not more than fifteen years, or fined not more than $25,000, or both. . . .

(2) In the case of a violation under subsection (a) of this section with respect to a controlled substance other than a narcotic drug in schedule I . . ., the person . . . shall be imprisoned not more than five years, or be fined not more than $15,000, or both. . . .

Throughout, the pertinent reference is to a "controlled substance."

Section 841 is similar. It too first lists "Unlawful Acts." Under that heading, it provides, in pertinent part:

(a) . . . it shall be unlawful for any person knowingly or intentionally—

(1) to . . . possess with intent to . . . distribute . . . a controlled substance;
. . . .

It then lists "Penalties." Under that heading, it provides, in pertinent part:

(b) . . . any person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a controlled substance in schedule I . . . which is a narcotic drug, . . . a term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both. . . .

(B) In the case of a controlled substance in schedule I . . . which is not a narcotic drug, . . . a term of imprisonment of not more than 5 years, a fine of not more than $15,000, or both.

Again, the reference is to a "controlled substance."

These statutes are much like statutes prohibiting theft. For example, Cal.Penal Code § 484 provides that one who steals the property of another is guilty of theft. There are two degrees of theft, grand and petty (§ 486). The general rule is that if the value of the property taken exceeds $200, the crime is grand theft (§ 487); if the value is less, the crime is petty theft

(§ 488). The punishment for grand theft is more severe than for petty theft (§§ 489, 490). Yet knowledge of the value of the property is not an element of the offense of grand theft. All that is required is a taking of property, intentionally, and with knowledge that one is not entitled to it. *See People v. Earle,* 1963, 222 Cal.App.2d 476, 477–78, 35 Cal.Rptr. 265. The Federal theft statute, 18 U.S.C. § 641, is similar. *See United States v. DiGilio,* 3 Cir., 1976, 538 F.2d 972, 978; *United States v. Ciongoli,* 3 Cir., 1966, 358 F.2d 439, 441.

We conclude that the federal statutes with which we are here concerned should be similarly treated. In *United States v. Davis,* 9 Cir., 1974, 501 F.2d 1344, the defendant was charged with distributing and possessing with intent to distribute mushrooms containing LSD. It was proved, and admitted, that he did so. He apparently claimed that he thought that he was handling psilocybin. His request for an instruction that "knowingly" in the indictment meant knowing that the substance was LSD was denied, and he claimed error. We said that under § 841:

This is not a correct statement of the law. . . . The government is *not required* to prove that the defendant actually knew the exact nature of the substance with which he was dealing. (501 F.2d at 1346.)

In *United States v. Jewell,* 9 Cir., *in banc,* 1976, 532 F.2d 697, 698, we said: "we are unanimously of the view" that *Davis* properly so held, and added:

We restrict *Davis* to the principle that a defendant who has knowledge that he possesses a controlled substance may have the state of mind necessary for conviction even if he does not know which controlled substance he possesses. *Cf. United States v. Moser,* 509 F.2d 1089, 1092–93 (7th Cir.1975).

In *United States v. Rea,* 9 Cir., 1976, 532 F.2d 147, 149, we said the same thing, citing *Jewell.* In *Jewell,* we also upheld an instruction similar to instruction 12 in this

case. Lopez does not attack that instruction.

These cases establish the law of this circuit. What they say is compatible with the statutory scheme. It was not error to give instructions 9 and 10. Here Lopez was charged with importing and possessing a controlled substance, heroin, and the evidence established, without contradiction, that he did so. The evidence also established, from Lopez's own mouth, that he intended to import marihuana, which, like heroin, is a schedule I substance. It was not necessary for the government to prove that he knew he was importing heroin, although the jury could have found, and probably did find under instruction 12, that he did know.

We are aware that neither *Davis* nor *Jewell* nor *Rea* is precisely in point. None involved actual importation or possession of a narcotic and a claim by the defendant that he thought he had imported and possessed a non-narcotic.

In *Davis,* the defendant thought that psilocybin mushrooms dosed with LSD were unfortified psilocybin. Both LSD and psilocybin are schedule I(c) hallucinogens under 21 U.S.C. § 812(c), and the penalty is the same for both under § 841(b)(1)(B).

In *Jewell,* the defendant entered the United States in a vehicle containing 110 pounds of marihuana, carefully concealed. His defense was that he did not know that the marihuana was there. He did not assert, as Lopez did in our case, that he thought that the vehicle contained some other drug.

*Rea* is like *Jewell.* The defendant imported heroin, and there was not even the suggestion of a possibility that she thought that she was importing a non-narcotic drug, or indeed any other drug but heroin.

Nevertheless, we think that the principle that those cases apply is applicable, whether or not the charge is possession of a narcotic controlled substance, as here. Under the statute, the violation is importing or possessing a controlled substance. The difference between narcotic and non-narcotic controlled substances is material only as to the applicable penalty. This does not read the words "heroin" and "narcotic" out of the indictment, as counsel suggests. They serve a proper purpose—to alert the defendant and the court to the penalty that is sought.

III. *The Evidence of a Prior Offense.*

Lopez argues that it was prejudicial error to permit the testimony about his 1974 marihuana offense. We do not agree. Lopez was caught red-handed crossing the border with heroin in his possession. His only defense was that he did not know that it was heroin, but thought it was marihuana. Our holding regarding the instructions makes it clear that such a belief, even if genuine, is not a defense. But Lopez's counsel at the trial conceded all of the other relevant facts, and concentrated his case, and especially his closing argument, entirely upon Lopez's claimed belief that what he carried was marihuana. No doubt counsel felt that to bring in or possess a pound and a half of marihuana was so minor a crime that he might get an acquittal from the jury if he could convince the jury that it should believe Lopez. Counsel began his argument to the jury by saying: "It appears certain that there is only one issue upon which you probably will have to decide this case, and that is knowledge and intent." RT Vol. VI at 20.

Under these circumstances, we hold that the evidence about the previous offense was relevant and probative. In 1974, Lopez was paid $1,000 to haul 340 pounds of marihuana from Mexico to Tucson. Having been in that deal, he could hardly believe that he was being paid $1,000 to haul a pound and a half of marihuana from Hermosillo, Mexico to Nogales, Arizona. A jury could well find that he must have known that he was carrying a drug worth a great deal more per pound than marihuana. The evidence showed that the street value of a pound of marihuana is $500 to $600.

Lopez argues that the judge should not have admitted the evidence without a hearing into the legality of the stop that led to the arrest in 1974, and that, even if the evidence is admissible under the Fourth Amendment, the statement violates F.R. Evid. 404(b) pertaining to evidence of other crimes, wrongs, or acts.

### A. *The Fourth Amendment.*

The government argues that Lopez waived any claim that the 1974 stop was illegal by pleading guilty in the resulting juvenile adjudication. It also argues that collateral estoppel bars Lopez from requesting a suppression hearing relating to statements he made while he was under arrest then.

■ The government cites cases refusing to consider tardy constitutional claims brought as challenges to underlying convictions. *E.g., Tollett v. Henderson,* 1973, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235. However, Lopez is not attacking the 1974 juvenile commitment. Instead, he seeks in the present case a determination that was never made, expressly or by necessary implication, in the 1974 proceeding. We need not consider the government's waiver or estoppel claim, however, because even if the 1974 arrest were illegal, the Fourth Amendment exclusionary rule would not bar use of Lopez's 1974 post-arrest statement in his 1982 trial.

The rule that evidence obtained in an illegal search or seizure must be suppressed "has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *United States v. Calandra,* 1974, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561. *See generally Walder v. United States,* 1954, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503. If application of the rule in a particular situation "does not result in appreciable deterrence, then, clearly, its use ... is unwarranted." *United States v. Janis,* 1976, 428 U.S. 433, 454, 96 S.Ct. 3021, 3032, 49 L.Ed.2d

1046; *see Calandra,* 414 U.S. at 351, 94 S.Ct. at 621.

We applied these principles in *United States v. Raftery,* 9 Cir., 1976, 534 F.2d 854, where we held that evidence excluded from a state drug prosecution could be used later "to prove the entirely separate offense of perjury before a grand jury." *Id.* at 857. There are some differences between *Raftery* and the case before us, but we do not think that they justify a different outcome. In *Raftery,* the evidence had been obtained in a state case, while both the 1974 and the present proceedings against Lopez are federal. We think the inquiry whether exclusion will, in any particular situation, deter illegal official conduct should not hinge alone on the matter of which sovereign employs the investigating or prosecuting officers. *See Tirado v. C.I.R.,* 2 Cir., 1982, 689 F.2d 307, 310–11.

Moreover, there is no suggestion here of any bad faith or collusion by the federal officers in the two arrests of Lopez. Eight years separate the two incidents; this is not a case where there are hints that the first investigation and prosecution might be planned to ensure the success of the second. We see nothing that persuades us that the officers of the 1974 arrest ever imagined that statements they elicited from Lopez then would be useful in proving his intent in a case involving another crime committed in 1982. Like the investigating officers in *Janis, Raftery,* and *Tirado,* the agents in 1974 did not have the later 1982 proceedings in their "zone of primary interest." *Janis,* 428 U.S. at 458, 96 S.Ct. at 3034.

We hold that the additional measure of deterrence that might be provided by the exclusion in the 1982 trial of statements from the 1974 arrest is too small to outweigh the cost to society of the loss of relevant and probative evidence in the 1982 proceeding.

### B. *Rule 404(b).*

■ Under F.R.Evid. 404(b), evidence of other crimes, wrongs, or acts is admissible to prove intent only if

(1) the prior act is similar and close enough in time to be relevant, (2) the evidence of the prior act is clear and convincing and (3) . . . the probative value of the evidence outweighs any potential prejudice.

*United States v. Bronco,* 9 Cir., 1979, 597 F.2d 1300, 1302–03, *quoting United States v. Brashier,* 9 Cir., 1976, 548 F.2d 1315, 1325. Lopez argues that his 1974 statement should not have been admitted under Rule 404(b) because it was both irrelevant and prejudicial. We look to see only if the trial judge abused his discretion in admitting such evidence. *United States v. Segovia,* 9 Cir., 1978, 576 F.2d 251, 253.

Although the passage of eight years makes the first incident fairly remote in time from the second, the trial judge properly exercised his discretion in finding the first similar enough to the second to be relevant. The fact that the first involved marihuana while the second involved heroin does not bar admission, when both arrests were for possession with intent to distribute, *see id.* at 252–53, and when Lopez's defense was that he thought he was carrying marihuana, not heroin.

Contrary to what Lopez now argues, the nature of the controlled substance that he was carrying was relevant to the jury's fact-finding. His counsel made it so. The trial judge gave proper limiting instructions both immediately after the agent's testimony about the 1974 incident, RT Vol. IV at 36–37, and at the close of trial, *id.* at 52–53.

Affirmed.