**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>GEORGE JEFFERSON,<br>*Defendant-Appellant*. | No. 13-50647<br><br>D.C. No.<br>3:13-cr-01378-LAB-1<br><br>OPINION |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted
January 8, 2015—Pasadena, California

Filed June 26, 2015

Before: Alex Kozinski, Kim McLane Wardlaw,
and William A. Fletcher, Circuit Judges.

Opinion by Judge Wardlaw;
Concurrence by Judge W. Fletcher

# SUMMARY[*]

## Criminal Law

Affirming a sentence for knowingly and intentionally importing a controlled substance into the United States in violation of 21 U.S.C. §§ 952 and 960, the panel rejected the defendant's argument that recent Supreme Court authority requires the government to prove that the defendant knew the specific type and quantity of the drugs he imported in order to trigger the ten-year mandatory minimum under 21 U.S.C. § 960(b)(1)(H).

Judge W. Fletcher concurred because this court is bound by *United States v. Carranza*, 289 F.3d 634 (9th Cir. 2002), but wrote to explain why *Carranza* should be overruled.

## COUNSEL

Kara Hartzler (argued), Federal Defenders of San Diego, Inc., San Diego, California, for Defendant-Appellant.

Laura E. Duffy, United States Attorney, Bruce R. Castetter, Assistant United States Attorney, Chief, Appellate Section, Criminal Division, and Benjamin J. Katz (argued), Special Assistant United States Attorney, San Diego, California, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

WARDLAW, Circuit Judge:

George Jefferson appeals his ten-year mandatory minimum sentence for knowingly and intentionally importing a controlled substance into the United States in violation of 21 U.S.C. §§ 952 and 960.  We reject Jefferson's argument that recent Supreme Court authority requires the government to prove that the defendant knew the specific type and quantity of the drugs he imported in order to trigger the ten-year mandatory minimum under 21 U.S.C. § 960(b)(1)(H). Accordingly, we affirm.

**I.**

Jefferson entered a guilty plea to one count of knowingly and intentionally importing 4.65 kilograms of a mixture containing methamphetamine into the United States. Jefferson claims that, at the time he crossed the border, he thought the substance he was transporting was marijuana, not methamphetamine, and that he did not know how much of the illegal substance was in his truck.   At sentencing he contended, among other things,[1] that under the Supreme Court's decisions in *Alleyne v. United States*, 133 S. Ct. 2151 (2013) and *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), knowledge of drug type and quantity were elements

---

[1] Jefferson also objected to the presentence report's classification of him as a career offender under United States Sentencing Guidelines (U.S.S.G.) § 4B1.1, and to the Probation Office's decision against recommending a minor role reduction in his Guidelines range under U.S.S.G. § 3B1.2.  The district court rejected these objections, and Jefferson does not appeal these rulings.

of the offense, and that, therefore, the government had to prove he knew the exact drug type and quantity he was transporting for the 10-year mandatory minimum under 21 U.S.C. § 960(b)(1)(H) to apply. The district court concluded that *Alleyne* and *Flores-Figueroa* did not abrogate long-established Ninth Circuit precedent that the government is not required to prove that a defendant knew the type or quantity of the controlled substance he imported to be found guilty under § 960. The district court imposed a sentence of 144 months of incarceration, followed by 10 years of supervised release.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's interpretation of a statute de novo and its application of a statute to the facts for abuse of discretion. *United States v. Yazzie*, 743 F.3d 1278, 1288 (9th Cir.), *cert. denied*, 135 S. Ct. 227 (2014).

## III.

It is "unlawful . . . to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I" of the Controlled Substances Act. 21 U.S.C. § 952(a). Methamphetamine is a schedule II controlled substance. 21 C.F.R. § 1308.12(a), (d)(2). "Any person who . . . knowingly or intentionally imports or exports a controlled substance . . . shall be punished as provided in [21 U.S.C. § 960(b)]." 21 U.S.C. § 960(a) (citing 21 U.S.C. § 952).

21 U.S.C. § 960(b), entitled "Penalties," prescribes varying minimum and maximum terms of imprisonment and

fines depending on the type and quantity of controlled substance a person imports. For example, a person convicted of importing 500 grams or more of a mixture containing methamphetamine shall be sentenced to a minimum of 10 years imprisonment and a maximum of life imprisonment. *Id.* § 960(b)(1)(H). A person convicted of importing less than 50 kilograms of marijuana faces no mandatory minimum, and shall be sentenced to a maximum of 5 years imprisonment, a fine not exceeding $250,000, or both. *Id.* § 960(b)(4).

We have consistently held that a defendant can be convicted under § 960 if he believed he imported or exported *some* controlled substance. *See United States v. Carranza*, 289 F.3d 634, 644 (9th Cir. 2002); *United States v. Ramirez-Ramirez*, 875 F.2d 772, 774 (9th Cir. 1989); *United States v. Rea*, 532 F.2d 147, 149 (9th Cir. 1976) (per curiam). The government is not required to prove that the defendant knew the type or quantity of the controlled substance he imported to obtain a conviction under § 960(a), *Carranza*, 289 F.3d at 644, or for the penalties under § 960(b) to apply, *see United States v. Salazar*, 5 F.3d 445, 446 (9th Cir. 1993); *United States v. Lopez-Martinez*, 725 F.2d 471, 474–75 (9th Cir. 1984). Section 960(a) requires a person to "knowingly or intentionally" import a controlled substance; § 960(b) refers to different types and amounts of controlled substances for sentencing purposes.

A.

Jefferson first argues that this long established precedent was abrogated[2] by the Supreme Court's decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which held that any fact that increases the mandatory minimum sentence is an "element" of the offense that must be submitted to the jury and found beyond a reasonable doubt. *Id.* at 2155. The decision extended the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), in which the Court established that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The *Alleyne* Court reasoned that "there is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum." 133 S. Ct. at 2163.

Jefferson correctly notes that *Alleyne* renders the type and quantity of a controlled substance "elements" of a § 960 offense. Both drug type and quantity can trigger, or increase, a mandatory minimum sentence under § 960(b), and therefore both facts must be proved to a jury beyond a reasonable doubt—or, as here, admitted by the defendant. *See Blakely v. Washington*, 542 U.S. 296, 303 (2004) (holding that facts may be admitted by the defendant "for *Apprendi* purposes"); *United States v. Guerrero-Jasso*, 752 F.3d 1186, 1190 (9th

---

[2] We may overrule our precedent only if it is clearly irreconcilable with an intervening higher authority. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). Absent such an intervening higher authority, "a later three-judge panel . . . has no choice but to apply the earlier-adopted rule." *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001).

Cir. 2014) (holding that admissions by the defendant satisfy *Apprendi*).**[3]**

This does not mean, however, as Jefferson urges, that the "knowingly or intentionally" mens rea standard found in § 960(a) applies to the elements found in § 960(b). *Alleyne* provides no guidance as to which facts increase mandatory minimum sentences under a given statute. It addressed only who must determine such facts, and which burden of proof applies. *See United States v. Montalvo*, 331 F.3d 1052, 1061 (9th Cir. 2003) (Kozinski, J., concurring) ("*Apprendi* affects only the identity of the decisionmaker and the burden of proof . . . ."); *United States v. Brough*, 243 F.3d 1078, 1079 (7th Cir. 2001) ("*Apprendi* . . . make[s] the jury the right decisionmaker (unless the defendant elects a bench trial), and the reasonable-doubt standard the proper burden, when a fact raises the maximum lawful punishment."). Determining which facts increase the mandatory minimum sentence is instead a statute specific inquiry—and *Alleyne* does not alter our precedent that a defendant's knowledge of the type and quantity of the controlled substance he imports is not such a fact, and, therefore, not an element of the offense.

Nor do two decisions that postdate the district court's ruling—*Burrage v. United States*, 134 S. Ct. 881 (2014), and *Rosemond v. United States*, 134 S. Ct. 1240 (2014)—require § 960(a)'s "knowingly or intentionally" standard to be applied to drug type and quantity. The *Burrage* Court examined a twenty-year mandatory minimum that applies when a defendant "knowingly or intentionally . . .

---

**[3]** A defendant who enters a guilty plea waives his right to a trial by jury, *see Florida v. Nixon*, 543 U.S. 175, 187 (2004), and therefore also waives *Alleyne* and *Apprendi*'s protections of that right.

distribute[s] . . . a controlled substance," 21 U.S.C. § 841(a), and its use results in "death or serious bodily injury," *id.* § 841(b)(1)(C).[4]  *See* 134 S. Ct. at 885.  In summarizing the charged offense, the Court stated that an element was the "knowing or intentional distribution of heroin."  *Id.* at 887. The Court's use of the word "heroin" instead of "controlled substance" does not clearly signal that a defendant must know the type of drug he imports or distributes.  The statute's mens rea standard was not at issue, and the Court's analysis was devoted entirely to the question of causation: whether § 841(b)(1)(C) "applies when use of a covered drug supplied by the defendant contributes to, but is not a but-for cause of, the victim's death or injury."  *Id.* at 885; *see also* 887–92.  "It is unlikely in the extreme that the Supreme Court intended by [a] single sentence to overrule *sub silentio* years of decisional law . . . ."  *United States v. Fonseca-Caro*, 114 F.3d 906, 907 (9th Cir. 1997) (per curiam).

In *Rosemond*, the Court concluded that a defendant charged with aiding and abetting an armed drug sale under 18 U.S.C. §§ 2 and 924(c) must have had "advance knowledge" that one of his confederates would use or carry a gun as part of the crime's commission, because "a state of mind extending to the entire crime" is necessary for conviction.  134 S. Ct. at 1245, 1248–49.  The federal aiding and abetting statute, unlike § 960, derives from common law standards of accomplice liability, a fact which was critical to the Court's decision.  *See id.* at 1245.  *Rosemond* says nothing

---

[4] 21 U.S.C. § 841 is "structurally identical" to § 960.  *United States v. Mendoza-Paz*, 286 F.3d 1104, 1110 (9th Cir. 2002).  In addition to the "death results" enhancement, § 841(b) also provides different minimum and maximum terms of imprisonment and fines based on the type and quantity of controlled substance distributed.  21 U.S.C. § 841(a)–(b).

about the mens rea required for the crime of importing a controlled substance, or about mens rea requirements generally.

Our conclusion that *Alleyne* did not change the mens rea requirement for § 960 is further supported by the Sixth Circuit's decision in *United States v. Dado*, 759 F.3d 550, 570 (6th Cir.), *cert. denied*, 135 S. Ct. 510 (2014). Addressing § 841, the Sixth Circuit rejected Dado's argument that *Alleyne* effectively overruled its precedent that "the government need not prove *mens rea* as to the type and quantity of the drugs in order to establish a violation of § 841(b)." *Dado*, 759 F.3d at 569 (quoting *United States v. Villarce*, 323 F.3d 435, 439 (6th Cir. 2003)). We agree with the Sixth Circuit that this contention confuses the requisite burden of proof with the mens rea standard, and that *Alleyne* did not—and could not—change the statutory text. *See id.* at 570.

B.

Nor does the Supreme Court's decision in *Flores-Figueroa*, 556 U.S. 646 (2009), alter the statutory landscape or override our decision in *Carranza*. In *Flores-Figueroa*, the Supreme Court examined the crime of aggravated identity theft as set forth in 18 U.S.C. § 1028A—a statute which penalizes a person, who in the commission of other specified crimes, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(1). The Court applied ordinary grammatical rules to the text of the statute, reasoning that "where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject

performed the entire action, including the object as set forth in the sentence." *Flores-Figueroa*, 556 U.S. at 650. The Court concluded that the statute required the government to prove that a defendant knew the identification belonged to another person. *Id.* This conclusion was also fully consistent with the way "courts ordinarily interpret criminal statutes," which is to "read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." *Id.* at 652.

The text of § 960(a) and (b) is not structured like that of 18 U.S.C. § 1028A(a)(1). The mens rea standard in § 960(a) is separate and distinct from the penalty ranges set forth in § 960(b). Because § 960's statutory text and structure are not parallel to that of § 1028A(a)(1), the ordinary grammatical interpretive rules articulated in *Flores-Figueroa* do not apply here. *See United States v. Castagana*, 604 F.3d 1160, 1162–63, 1165–66 (9th Cir. 2010) (concluding that *Flores-Figueroa* did not require a particular construction of a statute because the statute at issue was not parallel to the statute in *Flores-Figueroa*).

Relying on *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), a case cited in *Flores-Figueroa*, Jefferson further contends that the presumption that scienter is generally implied in a criminal statute, even when it is not expressed, requires us to read a mens rea element into § 960(b). In *X-Citement Video*, the Court interpreted a child pornography statute, 18 U.S.C. § 2252 (1988 ed. and Supp. V), that once again had different textual and structural

features than § 960,[5] and that, if interpreted in its most natural manner would criminalize a significant amount of innocent behavior. *See* 513 U.S. at 68–69, 73. The Court there held that the "knowingly" mens rea in § 2252(a)(1) applied to the terms "use of a minor" and "sexually explicit conduct" in § 2252(a)(1)(A). *Id.* at 78. The Court's imputation of knowledge to the use of a minor, i.e., requiring the government to prove that the defendant knew that the person depicted in the sexually explicit material was in fact underage, also avoided a potential First Amendment problem. *See id.* (citing *New York v. Ferber*, 458 U.S. 747, 764–65 (1982)).

Here, there is no potential for the penalization of innocent conduct nor do we face constitutional avoidance concerns. If the government must prove that the defendant knew he was importing some amount of a controlled substance, that is sufficient to ensure the statute penalizes only culpable conduct. *See United States v. Flores-Garcia*, 198 F.3d 1119, 1121–22 (9th Cir. 2000) ("Provided the defendant recognizes he is doing something culpable, however, he need not be aware of the particular circumstances that result in greater punishment."); *X–Citement Video*, 513 U.S. at 72 n.3 ("Criminal intent serves to separate those who understand the wrongful nature of their act from those who do not, but does

---

[5] Section 2252 penalizes any person who: "(1) knowingly transports or ships . . . in . . . interstate or foreign commerce . . . any visual depiction, if— (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct." 18 U.S.C. § 2252(a)(1).

not require knowledge of the precise consequences that may flow from that act once aware that the act is wrongful.").**[6]**

## IV.

Our precedent holding that the government need not prove that the defendant knew the precise type or quantity of the drug he imported is not clearly irreconcilable with any of the Supreme Court decisions cited by Jefferson. Because Jefferson knew that he imported a controlled substance into the United States, and because he in fact imported 4.65 kilograms of a mixture containing methamphetamine, the

---

**[6]** Jefferson also relies upon other principles of statutory construction to support his reading of § 960. He cites *Staples v. United States*, 511 U.S. 600, 616 (1994), for the proposition that courts should construe offenses that carry particularly harsh penalties (such as a ten-year mandatory minimum sentence) as requiring a stricter mens rea. He also notes that applying a mens rea of "knowingly" to drug type and quantity is consistent with the principle that any ambiguity in the reach of a criminal statute should be resolved in favor of lenity. Finally, he contends that reading "knowingly or intentionally" into the elements of drug type and quantity is consistent with congressional intent.

We need not consider the strength of these arguments, as we cannot reconsider our precedent or depart from its reasoning unless there is "intervening higher authority" that is "clearly irreconcilable" with the prior decision. *Miller*, 335 F.3d at 893; *see also Hart*, 266 F.3d at 1171. Jefferson has not cited to any "intervening higher authority" in support of these positions.

district court did not err in concluding that § 960(b)(1)(H)'s ten-year mandatory minimum term of imprisonment applied.[7]

**AFFIRMED.**

---

W. FLETCHER, Circuit Judge, concurring:

I concur in Judge Wardlaw's careful opinion, which faithfully applies our circuit's law regarding the *mens rea* required to sentence a defendant convicted of illegally importing drugs.  But I do so only because we are bound by *United States v. Carranza*, 289 F.3d 634 (9th Cir. 2002). Under the rule of *Carranza* and its predecessors, a defendant who reasonably believes that he is importing a relatively small quantity of marijuana into the country must be sentenced to the ten-year mandatory minimum prison term that applies to a defendant who knowingly imports the same quantity of methamphetamine.  I do not believe that Congress intended this result.  I write to explain why, in my view, *Carranza* should be overruled.

I

Jefferson was convicted of violating 21 U.S.C. §§ 952 and 960, which together criminalize the importation of narcotic drugs into the United States.  Section 960, under which

---

[7] In Jefferson's reply brief, he also argues that the Information violated due process by not providing him with fair notice of the Government's burden and the charges against him.  Jefferson has waived this argument by not raising it in his opening brief.  *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006).

Jefferson's penalty was determined, is an omnibus narcotics statute that prescribes penalties for a variety of trafficking crimes. Section 960(a) sets out "[u]nlawful acts." 21 U.S.C. § 960(a). As relevant here, it provides that "[a]ny person who . . . knowingly or intentionally imports . . . a controlled substance . . . shall be punished as provided in subsection (b) of this section." *Id.* (citing *id.* § 952).

Section 960(b) sets out separate and increasingly severe penalties corresponding to different types and quantities of drugs. Defendants who import up to 50 kilograms of marijuana, for example, are not subject to a mandatory minimum sentence; instead, they face a maximum prison sentence of five years. *Id.* § 960(b)(4) (citing *id.* § 841(b)(1)(D)). By contrast, defendants who import as little as 500 grams of cocaine are subject to a five-year mandatory minimum sentence. *Id.* § 960(b)(2)(B). Defendants who import as little as 50 grams of methamphetamine are subject to a ten-year mandatory minimum sentence. *Id.* § 960(b)(1)(H).

These escalating penalties, which depend on the particular drug a defendant imported, were established by the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207. *See* U.S. Sentencing Comm'n, *Special Report to Congress: Cocaine and Federal Sentencing Policy* 116 (1995). Under the Act, a defendant who manufactures, distributes, or imports certain quantities of dangerous illegal drugs faces significantly more severe sentences than a person who traffics in the same quantities of less dangerous drugs. The increasingly severe penalties correspond to the culpability of the defendant, as well as the danger to the public posed by the importation of the particular drugs.

The question presented in this appeal is whether a defendant who reasonably believed he was illegally importing several kilograms of marijuana, but in fact illegally imported several kilograms of methamphetamine, must be sentenced to the ten-year minimum term that corresponds to methamphetamine. As Judge Wardlaw's opinion explains, we have confronted this question on several occasions. *See, e.g.*, *Carranza*, 289 F.3d 634; *United States v. Salazar*, 5 F.3d 445 (9th Cir. 1993); *United States v. Ramirez-Ramirez*, 875 F.2d 772 (9th Cir. 1989); *United States v. Lopez-Martinez*, 725 F.2d 471 (9th Cir. 1984). Each time, we have concluded that "the government need not prove that the defendant knew the *type* and *amount* of a controlled substance that he imported or possessed; the government need only show that the defendant knew that he imported or possessed *some* controlled substance." *Carranza*, 289 F.3d at 644 (emphasis in original); *see also* Op. at 5.

The *Carranza* rule has devastating consequences for a defendant who reasonably believes that he is carrying a controlled substance but is mistaken about what that substance is. This case makes those consequences clear. The government does not dispute Jefferson's claim that he believed he was importing marijuana into the United States. If Jefferson had in fact been carrying only the four kilograms of marijuana that he believed he was carrying, he would have faced a maximum sentence of five years, with no mandatory minimum. Under *Carranza*, however, he must be sentenced to a minimum of ten years in prison because he was, in fact, carrying methamphetamine.

II

If I were writing on a clean slate, I would hold that Jefferson, who reasonably believed he was importing marijuana, may not be punished by the mandatory minimum that attaches to the importation of methamphetamine. I reach this conclusion for three reasons.

First, it is a cardinal rule of the interpretation of criminal statutes that "the existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 436 (1978) (alteration and internal quotation marks omitted). That is, we generally interpret criminal statutes to require the government to prove beyond a reasonable doubt that "the defendant kn[e]w the facts that ma[d]e his conduct illegal." *Staples v. United States*, 511 U.S. 600, 605 (1994). Absent this background rule, the terms of many federal statutes "would sweep out . . . , except when expressly preserved, the ancient requirement of a culpable state of mind" — a result "inconsistent with our philosophy of criminal law." *Morissette v. United States*, 342 U.S. 246, 250 (1952). Subjecting a defendant to a decade in prison based on a fact that he did not know — indeed, in this case, a fact that Jefferson reasonably believed not to be true — is inconsistent with "fundamental and far-reaching" principles of criminal liability. *Id.* at 247.

Second, I find nothing in the Anti-Drug Abuse Act that overcomes the presumption of a *mens rea*. *See Staples*, 511 U.S. at 605–06. An important purpose of the escalating mandatory minimums established by the Act, as noted above, is to approximate the culpability of the defendant and the dangerousness of his act. Whether or not these mandatory

minimums are reliable approximations, *see Kimbrough v. United States*, 552 U.S. 85, 97–99 (2007) (canvassing criticisms of the sentencing disparity between crack and powder cocaine), they reflect the basic insight that someone who imports a kilogram of methamphetamine is more culpable than someone who imports a kilogram of marijuana.

The Supreme Court has recognized an exception to the presumption of a *mens rea* for so-called "public welfare" offenses. *See Staples*, 511 U.S. at 506–07; *U.S. Gypsum Co.*, 438 U.S. at 437–38; *cf. United States v. Balint*, 258 U.S. 250 (1922). This exception originated in *Balint*, which considered whether a predecessor to the Anti-Drug Abuse Act, the Narcotic Act of 1914, required the government to prove only that a defendant knew that the items he sold were "narcotics" criminalized by the statute. *See id.* at 254. But the sentencing scheme established by the Anti-Drug Abuse Act looks nothing like the scheme considered in *Balint*. Under the 1914 Act, a convicted defendant faced only the imposition of a discretionary fine or a short term in prison. *See* Pub. L. No. 63-223, ch. 1, § 9, 38 Stat. 785, 789 (1914). The purpose of the "criminal penalty," as the Court explained, was simply "to secure recorded evidence" of transactions in narcotics, and thereby to promote compliance. *Balint*, 258 U.S. at 254; s*ee also Staples*, 511 U.S. at 616 (noting that public welfare offenses, as a historical matter, "almost uniformly . . . provided for only light penalties such as fines or short jail sentences").

By contrast, the Anti-Drug Abuse Act sets up a sentencing scheme that — at least as applied absent a *mens rea* requirement — is indiscriminately punitive in nature. It is considerably more punitive than the statutes considered in

*Staples*, *U.S. Gypsum*, and *Morissette*. As Judge Kavanaugh has pointed out:

> The "harsh penalties" in *Staples* and [*United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994)] were statutory *maximums* of 10 years' imprisonment. The "sever[e]" sanction in *U.S. Gypsum* was a statutory *maximum* of 3 years' imprisonment. And the "high" penalty in *Morissette* was a statutory *maximum* of one year in prison. The Supreme Court deemed those penalties sufficiently stringent to support a requirement of mens rea.

*United States v. Burwell*, 690 F.3d 500, 548 (D.C. Cir. 2012) (en banc) (Kavanaugh, J., dissenting) (citations omitted). The penalties considered in these cases were "harsh." The mandatory minimum sentences imposed under § 960(b) are even more so. Anyone convinced that he is importing marijuana but convicted of importing methamphetamine faces a mandatory minimum of ten years. The presumption of a *mens rea* is designed to avoid precisely this injustice.

Third, my conclusion is underscored by the Supreme Court's increasing attention to the Sixth Amendment consequences of statutory sentencing schemes. *See Alleyne v. United States*, 133 S. Ct. 2151 (2013); *Harris v. United States*, 536 U.S. 545 (2002), *overruled by Alleyne*, 133 S. Ct. at 2155; *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Although I agree with Judge Wardlaw that *Alleyne*, the most recent in this line of cases, is not "clearly irreconcilable" with *Carranza*, *see Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc), *Alleyne* reflects a broader concern with the

unfairness of sentencing schemes in which the facts that are "'legally essential to the punishment to be inflicted'" need not be found beyond a reasonable doubt. *See Alleyne*, 133 S. Ct. at 2160 (quoting 1 Joel Prentiss Bishop, *Criminal Procedure* 51 (2d ed. 1872)).

*Alleyne* held that any "facts that increase mandatory minimum sentences must be submitted to the jury." *Id.* at 2163. The government agrees that in a case brought under 21 U.S.C. § 960, such facts include the type and quantity of drug. After *Alleyne*, "the core crime and the fact triggering the mandatory minimum sentence" — here, the drug type and quantity — "together constitute a new, aggravated crime, each element of which must be submitted to the jury." *Id.* at 2161. There is no reason, in light of *Alleyne*, why it should be enough for the government to prove that a defendant knew that he was carrying a controlled substance, irrespective of what that substance was, in order to subject him to the mandatory minimum sentences set out at § 960(b). If the government must prove that Jefferson "knowingly" imported four kilograms of methamphetamine into the United States — that is, if both the fact of importation and the type of drug are "elements" of the crime — it should be required to prove not only that Jefferson knew he was importing an illegal drug, but also that he knew what that drug was.

### III

The Supreme Court's recent decision in *McFadden v. United States*, No. 14-378, 2015 WL 2473377 (U.S. June 18, 2015), does not change my reading of the statute in the case now before us. In *McFadden*, the Supreme Court considered the *mens rea* required to convict a defendant of violating the Controlled Substance Analogue Enforcement Act of 1986

("Analogue Act"). *See* 21 U.S.C. §§ 802(32)(A), 813. The Court held that in order to convict a defendant of violating the Analogue Act, the government must prove that the defendant knew "that the substance he is dealing with is some unspecified substance listed on the federal drug schedules." 2015 WL 2473377, at *4. It further held that, when trying to convict a defendant of violating the narcotics statutes using an analogue, the government must show that he "knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue." *Id.* at *5.

But the Court did not address whether a defendant could be subject to the mandatory minimums set out at § 960(b)(1) and (2) if all the defendant knew was that he had dealt with "some unspecified substance listed on the federal drug schedules . . . regardless of whether he knew the particular identity of the substance." *Id.* at *4–5. A defendant convicted of violating the Analogue Act is not subject to the mandatory minimums set out at § 960(b)(1) and (2); he is instead subject only to the *maximum* sentence set out at § 960(b)(3) that applies to all defendants whose crime "involve[s] a controlled substance in schedule I." *See* 21 U.S.C. § 960(b)(3); *see also id.* § 813 ("A controlled substance analogue shall . . . be treated . . . as a controlled substance in schedule I."). Thus the Court had no reason in *McFadden* to consider whether the government must prove that a defendant knew "the particular identity" of the controlled substance he dealt with in order to subject him to the escalating mandatory minimums set out in the Anti-Drug Abuse Act for particular illegal drugs. For the reasons above, I would hold that the government must prove such knowledge.

I have no quarrel with the proposition that the government can prove a violation of § 960(a) by proving only that a defendant knew he violated the narcotics laws by importing "some unspecified substance listed on the federal drug schedules." *McFadden*, 2015 WL 2473377, at \*4. But I do not believe the government can subject that defendant to the escalating mandatory minimums set out at § 960(b)(1) and (2) without proving that he knew which illegal drug he was importing. Our longstanding presumption of a *mens rea* requirement, the history and purpose of the Anti-Drug Abuse Act, and the lessons of *Alleyne* and *Apprendi* teach us otherwise.

IV

Imposing ten years of mandatory imprisonment on this defendant is fundamentally "inconsistent with our philosophy of criminal law." *Morissette*, 342 U.S. at 250. While I join Judge Wardlaw's careful opinion, I do so only because we are bound by *Carranza*. The government does not dispute that Jefferson reasonably believed that he was illegally importing marijuana. In the absence of *Carranza*, I would hold that Jefferson is not subject to the ten-year mandatory minimum applicable to the illegal importation of methamphetamine.