# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 7, 2024          Decided July 8, 2025

No. 21-1133

PATRICK KENNEDY,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE,
APPELLEE

———

Appeal from the United States Tax Court

———

*Paul D. Scott* argued the cause for *amicus curiae* The Anti-Fraud Coalition in support of appellant. With him on the briefs was *Lani Anne Remick*.

*Patrick S. Kennedy*, pro se, was on the briefs for appellant.

*Julie Ciamporcero Avetta*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the briefs were *Bruce R. Ellisen* and *Matthew S. Johnshoy*, Attorneys.

———

2

No. 22-1239

ROY J. MEIDINGER, SR.,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE,
APPELLEE

———

Appeal from the United States Tax Court

———

*Jillian Sheridan Stonecipher*, appointed by the court, argued the cause for appellant as *amicus curiae*. With her on the briefs were *Jeffrey T. Green* and *Jennifer J. Clark*.

*Roy J. Meidinger*, pro se, was on the briefs for appellant.

*Julie Ciamporcero Avetta*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Bruce R. Ellisen*, Attorney. *Norah Bringer*, *Arthur T. Catterall*, and *Matthew S. Johnshoy*, Attorneys, entered appearances.

Before: HENDERSON, RAO and WALKER, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

3

KAREN LECRAFT HENDERSON, *Circuit Judge*: In recent years, this Court has considered the bounds of the U.S. Tax Court's jurisdiction to review whistleblower claims under 26 U.S.C. § 7623(b). In 2022, we held that one portion of subsection (b)(1)—requiring the Internal Revenue Service (IRS) to have "proceed[ed] with an[] administrative or judicial action"—is jurisdictional. *See Li v. Comm'r*, 22 F.4th 1014 (D.C. Cir. 2022). On the facts of *Li*, we concluded that if the IRS Whistleblower Office (WBO) neither forwards a whistleblower's claim to an IRS operating division nor acts against a taxpayer, there is no judicially reviewable action. *Id.* at 1017. More recently, we held that a second portion of subsection (b)(1)—that the IRS have "collected" "proceeds . . . as a result of the action"—is non-jurisdictional. *Lissack v. Comm'r*, 125 F.4th 245 (D.C. Cir. 2025). On the facts of *Lissack*, we concluded that once the WBO forwards the whistleblower's claim to an IRS operating division and that division audits the targeted taxpayer, the Tax Court has jurisdiction to review the whistleblower's award. *Id.* at 254–56.

In these consolidated appeals, the WBO sent two whistleblowers' claims to an operating division but that division took no action against any taxpayer. We are asked to resolve whether these facts fall on the *Li* or *Lissack* side of the jurisprudential cleavage and, accordingly, whether the Tax Court may properly exercise jurisdiction. We hold that *Li* controls and therefore the Tax Court lacks jurisdiction. The movement of a whistleblower's form from one wing of the IRS to another is an exercise in paperwork shuffling, not a jurisdictionally relevant affair. We accordingly dismiss Roy Meidinger's petition in toto for want of jurisdiction, dismiss two of Patrick Kennedy's claims and deny his third claim on the merits, and remand to the Tax Court for proceedings consistent with this opinion.

## I.   BACKGROUND

### A.   Statutory & Regulatory Background

A longstanding feature of our nation's tax laws has been a monetary award system for whistleblowers who aid the government in detecting tax violations. *See* 26 U.S.C. § 7623(a). This program, dating to 1867, previously left award payments to the Secretary's unreviewable discretion. *See* Act of March 2, 1867, Pub. L. No. 39-169, § 7, 14 Stat. 471, 473. As a result, the whistleblower system was subject to "arbitrary and inconsistent" decision making. *Whistleblower 11332-13W v. Comm'r*, 142 T.C. 396, 400 (2014) (citing Treasury Inspector General report). In 2006, the Congress responded by amending § 7623 as part of the Tax Relief and Health Care Act (TRHCA) to mandate award payments to certain whistleblowers whose information leads to tax recoveries above a minimum threshold. Pub. L. No. 109-432, § 406, 120 Stat. 2922, 2958–60. The TRHCA also created the Whistleblower Office within the IRS. *Id.* § 406(b).

The whistleblower process commences when a claimant files a Form 211 with the WBO. Form 211 is a standardized application used by a whistleblower to alert the IRS to possible tax violations and to seek a monetary share of the agency's eventual recovery. 26 C.F.R. § 301.7623-3(e)(2)(i) (2019). Under Treasury regulations, the WBO conducts an initial review to determine whether to reject the Form 211 for lack of a colorable claim to compensation. *Id.* § 301.7623-3(c)(7). A rejection "relates solely to the whistleblower and the information on the face of the claim that pertains to the whistleblower." *Id.* If a Form 211 survives this stage, it then proceeds to an IRS operating division for further review, at which point the IRS may still deny the form. A denial "relates

to or implicates taxpayer information" and may occur if "the IRS either did not proceed based on the information provided by the whistleblower . . . or did not collect proceeds." *Id.* § 301.7623-3(c)(8).

Should the IRS "proceed[] with any administrative or judicial action . . . based on information" provided by a whistleblower, that whistleblower "shall . . . receive as an award" between 15 and 30 per cent of the recovery, depending on "the extent to which the individual substantially contributed to [the] action." 26 U.S.C. § 7623(b)(1). Subsections (b)(2) and (b)(3) limit awards if the whistleblower's information was not the principal basis for the IRS's action or if the whistleblower planned and initiated the wrongdoing. A whistleblower dissatisfied with his award may appeal the IRS's decision to the Tax Court, which has jurisdiction to hear appeals of "[a]ny determination regarding an award under" subsections (b)(1)–(3). *Id.* § 7623(b)(4).

The Tax Court initially interpreted § 7623(b)(4) to confer jurisdiction to review "the amount *or denial* of an award determination," *Cooper v. Comm'r*, 135 T.C. 70, 75 (2010) (emphasis added), on the theory that "a denial or rejection is a (negative) 'determination regarding an award,'" *Lacey v. Comm'r*, 153 T.C. 146, 163 n.19 (2019). We disagreed in *Li* and held that "*Cooper* and *Lacey* were wrongly decided" and that § 7623(b)(4) does not grant "the Tax Court jurisdiction over the threshold first step, the initial rejection of a whistleblower award before the WBO makes an award determination under subsections (b)(1)–(3)." 22 F.4th at 1016–17. As *Li* explained, "[a] threshold rejection of a Form 211 by nature means that the IRS is not *proceeding* with an action" and thus "there is no award determination, negative or otherwise, and no jurisdiction for the Tax Court." *Id.* at 1017. More recently, the Court clarified that *Li*'s jurisdictional holding

applied only to whether the IRS "proceeds with an action," not to whether the IRS "collected proceeds based on the whistleblower's information." *Lissack*, 125 F.4th at 255 (internal quotations omitted). To conclude otherwise would "render[] the jurisdictional grant coextensive with the merits of a whistleblower appeal." *Id.*

## B. Factual & Procedural Background

### 1. *Roy Meidinger*

Petitioner Roy Meidinger asserts that discounts offered by healthcare providers to insurance companies constitute a form of debt relief. Because this relief has gone untaxed, the industry has ostensibly received an improper windfall to the tune of nine trillion dollars. For years, Meidinger has unsuccessfully pursued a trifecta of whistleblower claims stemming from his debt-relief theory. *See Meidinger v. Comm'r*, 559 F. App'x 5 (D.C. Cir. 2014); *Meidinger v. Comm'r*, 771 F. App'x 112 (D.C. Cir. 2019); *Meidinger v. United States*, 146 Fed. Cl. 491 (2020), *aff'd*, 989 F.3d 1353 (Fed. Cir. 2021).

On July 18, 2019, Meidinger took one more bite at the apple. He submitted a Form 211 to the WBO that was in all material respects a repetition of his previous allegations. Upon receipt of Meidinger's latest allegations, the WBO reviewed Meidinger's claim and recommended that it be forwarded to the IRS Tax Exempt and Government Entities (TEGE) Operating Division. The TEGE reviewed Meidinger's claim, surveyed the pertinent tax return and chose not to investigate further because his allegations were "not specific, credible, or [were] speculative."[1] Supplemental Appendix (S.A.) 40–42.

---

[1] A survey is "[t]he process by which an examiner makes the determination *not* to audit [a] tax return . . . before examining any

The WBO then prepared its own memorandum, which recommended that the IRS reject Meidinger's claims on the same grounds. Three days later, on January 31, 2020, the IRS informed Meidinger by letter that the WBO had "made a final decision to reject [his] claim." S.A. 1.

On February 20, 2020, Meidinger timely appealed to the Tax Court. *See* 26 U.S.C. § 7623(b)(4). The IRS moved to dismiss on the ground that the Tax Court lacked authority to compel the IRS to proceed with an administrative or judicial action. Relying on *Lacey*, the Tax Court denied the IRS's dismissal motion. Litigation continued apace until early 2022, at which time the Tax Court ordered a stay of proceedings in light of our intervening decision in *Li*. On July 5, 2022, the Tax Court lifted the stay and dismissed Meidinger's case for lack of jurisdiction. Meidinger *pro se* filed a timely appeal to the Eleventh Circuit, which transferred the case to this Circuit. *See* 26 U.S.C. § 7483 (granting 90 days to appeal a decision of the Tax Court); Fed. R. App. P. 13(a)(1) (same). We appointed Jeffrey T. Green as amicus curiae in support of Meidinger.[2]

## 2. *Patrick Kennedy*

Petitioner Patrick Kennedy filed a whistleblower complaint with the WBO in April 2012. In his Form 211, Kennedy alleged that three interrelated corporations owed over $150,000,000 in unpaid taxes. In brief, Kennedy claimed that

---

books and records, because an examination would not result in a material change to the taxpayer's tax liability." IRM pt. 4.10.2.1.4(1) (Sept. 9, 2019) (emphasis added).

[2] During the pendency of this appeal, Green retired and was replaced by Jennifer Clark. Ms. Clark has more than ably discharged her duties and we thank her and the other Amicus counsel of record for their assistance.

Taxpayer 1 raided the assets of Taxpayers 2 and 3, tax-exempt employee beneficiary associations, for its own use.  The WBO screened Kennedy's claim and referred it to the Large Business and International (LB&I) Operating Division.  At this point, Kennedy's claim became mired in bureaucratic delay.

LB&I determined that Kennedy's claim fell outside its bailiwick and transferred his complaint to the TEGE.  Around the same time, the IRS trifurcated Kennedy's Form 211 into three separate claims, one against each of the targeted taxpayers.  The TEGE placed its review of Taxpayer 1"in suspense" because it was outside the TEGE's domain.  In effect, Kennedy's Taxpayer 1 claim fell into a jurisdictional black hole: neither evaluated by the LB&I nor subject to the TEGE's examination.  The TEGE took no action regarding Kennedy's Taxpayer 2 claim because the company was a defunct entity.

As to Taxpayer 3, Kennedy's claim found greater traction. A revenue agent in the TEGE undertook an examination—i.e., an audit—of Taxpayer 3's 2011 tax returns.  That examination languished for two years until its eventual completion in June 2015.  The IRS ultimately concluded that Taxpayer 3 remained eligible for tax exempt status and closed the record.  The TEGE then recommended that the IRS issue a denial letter because the agency took no action on Kennedy's first two claims and the claim-three examination resulted in no change.  The WBO agreed and, in December 2016, it mailed Kennedy a preliminary denial letter.  Kennedy asked the IRS to reconsider its denial to no avail.  On February 1, 2017, nearly five years after Kennedy commenced his quest, the IRS issued a final decision denying all three of his claims.

On March 3, 2017, Kennedy timely appealed to the Tax Court.  The Tax Court reached the merits and concluded the

WBO did not abuse its discretion in denying Kennedy's claims. Kennedy then appealed the Tax Court decision to the Seventh Circuit, which deemed venue improper and transferred the case to this Court. Kennedy's appeal was held in abeyance pending the resolution of *Lissack*. Once *Lissack* issued, the stay was lifted and the case proceeded on the merits. Meidinger's and Kennedy's cases were consolidated for disposition after oral argument.

## II.  ANALYSIS

This Court exercises jurisdiction pursuant to 26 U.S.C. § 7482(a)(1) but our jurisdiction is predicated on the Tax Court possessing jurisdiction in the first instance. *See United States v. Corrick*, 298 U.S. 435, 440 (1936) (explaining that, where the lower court lacks jurisdiction, "we have jurisdiction on appeal, not of the merits, but merely for the purpose of correcting the error of the lower court in entertaining the suit"). We review Tax Court decisions as we do decisions of the district court sitting without a jury. 26 U.S.C. § 7482(a)(1). We consider *de novo* the Tax Court's jurisdictional determinations, *Myers v. Comm'r*, 928 F.3d 1025, 1031 (D.C. Cir. 2019), as well as its decision to grant summary judgment, *Eshel v. Comm'r*, 831 F.3d 512, 517 (D.C. Cir. 2016). We review the IRS's underlying determination for abuse of discretion. *Colacurcio v. Comm'r*, 727 F. App'x 705, 706 (D.C. Cir. 2018) (per curiam).

The whistleblower statute authorizes the Tax Court to review any "determination regarding an award under paragraphs (1), (2), or (3)" of § 7623(b). 26 U.S.C. § 7623(b)(4). These consolidated appeals lie at the intersection of two of our precedents interpreting § 7623(b)(4): *Li* and *Lissack*. In *Li*, we held that the Tax Court lacks jurisdiction to review "the initial rejection of a whistleblower award before

the WBO makes an award determination under subsections (b)(1)–(3)." 22 F.4th at 1016. There, "[t]he WBO did not forward [the whistleblower's] Form 211 to an IRS examiner for further action, and the IRS did not take any action against the target taxpayer." *Id.* at 1017. Instead, the claim was rejected during an initial screening "for vague and speculative information." *Id.* Rejection at this "threshold first step," *Li* explained, means that the IRS is not proceeding with "administrative or judicial action" and thus there is no "award determination, negative or otherwise, and no jurisdiction for the Tax Court." *Id.* (internal quotation marks omitted). In other words, when the WBO rejects a Form 211 during an initial review, that decision is unreviewable.

In *Lissack*, we held that the Tax Court had jurisdiction to review the denial of a whistleblower award when the IRS had conducted an examination based on the whistleblower's information. 125 F.4th at 254–56. There, the WBO "referred [the whistleblower's] submission to the IRS, and an IRS revenue agent initiated an examination of the . . . issue that [the whistleblower] identified." *Id.* at 255. The Court concluded that the IRS's "referral and examination count as the IRS proceeding with an administrative action that was based on the information [the whistleblower] brought to the Secretary's attention." *Id.* (citation modified). Rejecting the argument that subsection (b)(1)'s second requirement—"that the IRS . . . collect[] proceeds based on the whistleblower's information"—is jurisdictional, the Court found it sufficient that the IRS had proceeded with administrative action against the taxpayer identified by the whistleblower. *Id.* (internal quotation marks omitted). Accordingly, the Court held that the WBO's denial of the whistleblower claim was a reviewable "determination regarding an award" under § 7623(b)(4). *Id.* The Court left for another day "the precise line between an

unreviewable threshold rejection and a reviewable determination." *Id.* at 256.

In sum, *Li* presented a case in which the whistleblower's claim did not advance past the WBO and the IRS took no action against a taxpayer. *Lissack* presented more: the whistleblower's claim was referred by the WBO to an operating division that then examined the taxpayer before ultimately denying the claim. Meidinger and Kennedy fall between these two bookends. Meidinger's Form 211 made it past the WBO's threshold screening and was referred to an IRS operating division. But that division conducted no investigation because it concluded that Meidinger's claims were wholly speculative or implausible. Kennedy's Form 211 likewise progressed to an IRS operating division. On claims one and two, the operating division took no action. On claim three, the operating division conducted an examination of the targeted taxpayer based on Kennedy's information.

Both Meidinger and Kennedy contend that the WBO's transmission of their Form 211s to an operating division conferred jurisdiction on the Tax Court.[3] In other words, any action succeeding *Li*'s "threshold first step" rejection suffices to clothe the Tax Court with jurisdiction. Alternatively, Meidinger's Amicus urges that *Li* was wrongly decided and should be overruled.[4] As explained *infra*, *Li* forecloses Meidinger's case and Kennedy's first two claims. Amicus's

---

[3] Because Meidinger and Kennedy advance similar arguments, we focus primarily on Meidinger's contentions. We address Kennedy's separate claims *infra* § II.C.

[4] Another amicus, the Anti-Fraud Coalition (TAF), participated in Kennedy's appeal and argued the case on his behalf. Our reference to "Amicus" is to Meidinger's court-appointed amicus. TAF is separately identified where appropriate.

argument that *Li* should be overruled fares no better. On Kennedy's third claim, we exercise jurisdiction and affirm the Tax Court.

### A. *Li* Controls Meidinger's Petition

Amicus offers three bases to support our jurisdiction of Meidinger's appeal. First, *Li* involved a "rejection" of a Form 211 but Meidinger's claim was "denied." Second, the WBO sent Meidinger's Form 211 to an operating division for further examination, which constitutes "administrative action." Third, the plain text of § 7623(b) uses expansive terminology that encompasses the IRS's actions regarding Meidinger and Kennedy's claims.

### 1. *Rejection vs. Denial*

Amicus first argues that this case falls outside *Li* because that case involved a rejection of a Form 211 but Meidinger's Form 211 was denied. *See* 26 C.F.R. §§ 301.7623-3(c)(7) (rejection), (c)(8) (denial); *Li*, 22 F.4th at 1016–17 (holding that Tax Court jurisdiction is lacking at the "threshold first step," when the IRS renders an "initial rejection of a whistleblower award"). The IRS's final letter to Meidinger recites that his claim is "rejected," not "denied." But even if we disregard the agency's terminology, Amicus "read[s] too much into too little" by narrowly focusing on a single sentence plucked from *Li* rather than the logic of its reasoning. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373 (2023).

As we recently held in *Shands v. Comm'r*, "*Li*'s jurisdictional rule does not turn on whether the IRS labeled its decision a 'rejection' or a 'denial.'" 111 F.4th 1, 9 (D.C. Cir. 2024). "Instead, our jurisdictional inquiry focuses on what the IRS *did*—*i.e.*, whether it '*proceed[ed]* with any administrative or judicial action.'" *Id.* (quoting *Li*, 22 F.4th at 1017). In other

words, unless the IRS initiates some action, there is no judicially reviewable decision. Nothing in the text of § 7623(b) speaks to rejections or denials; instead, the statute ties jurisdiction to a "determination regarding an award under paragraph (1), (2), or (3)," and such a determination arises only if there has been "administrative or judicial action." 26 U.S.C. § 7623(b)(1), (4).

## 2. *WBO vs. Operating Division*

The WBO referred Meidinger's Form 211 to an operating division, which reviewed Meidinger's claim and surveyed one taxpayer before ultimately recommending that the claim be disposed of. This, Amicus posits, constitutes administrative action. As *Lissack* explained, "[t]he phrase 'administrative action' [] generally refers to acts of executive agencies." 125 F.4th at 257. According to Amicus, the corollary is that any act by an executive agency constitutes a judicially reviewable administrative action. But *Lissack* went on to conclude that, in context, "administrative action[s]" are limited to "actions for 'detecting underpayments of tax' or 'detecting and bringing to trial' persons who violate or 'conniv[e]' to violate internal revenue laws." *Id.* (quoting 26 U.S.C. § 7623(a)). *Lissack* added that "two other phrases from subsection(b)(1)"— "'based on' and 'substantially contributed'"—"help inform the scope of 'administrative action'" as used in the statute. *Id.* (quoting 26 U.S.C. § 7623(b)(1)). These terms, *Lissack* explained, limit administrative actions to actions "on the discrete tax issue or issues the whistleblower's information identifies" if the whistleblower's "information has substantially contributed to the IRS's administrative action and its ultimate recovery." *Id.* Amicus's capacious reading of administrative actions is also inconsistent with *Li*. Although a threshold rejection of a Form 211 is an *executive* agency action, *Li* held—and *Lissack* did not disturb—that a threshold rejection

does not constitute an *administrative* action in the context of § 7623(b)(1).

We have no need here to flesh out the precise metes and bounds of the meaning of "proceed[ing] with any administrative . . . action." 26 U.S.C. § 7623(b)(1). Amicus offers only two distinctions between *Li* and this case: (i) Meidinger's Form 211 was sent to an IRS operating division and (ii) an agent within that division surveyed a taxpayer. Neither suffices.

*First*, unlike in *Li*, Meidinger's Form 211 was transmitted from the WBO to an operating division. That action does nothing to bridge the jurisdictional chasm, as § 7623(b) does not turn on which office of the IRS rejects (or denies) a Form 211. Although the statute vests the WBO with authority to process a whistleblower claim, it may choose to "investigate . . . matter[s] itself or assign [them] to the appropriate Internal Revenue Service office." TRHCA § 406(b)(1)(B); *see also* IRM pt. 25.2.2.1.2(1) (Mar. 13, 2023) ("[TRHCA] explicitly provides that the Whistleblower Office may determine whether to proceed with an action or refer the claim to another division for [its] consideration.").[5] Thus, any distinction between the WBO and the operating division is irrelevant and, in turn, Tax

---

[5] Pursuant to the cited authority, the IRS internally bifurcates responsibility for claims evaluation between the WBO and its operating divisions. The WBO conducts an initial prescreening before forwarding the claim to an operating division for classification and a determination of whether to initiate an investigation. IRM pts. 25.2.1.2 (Apr. 29, 2019), 25.2.1.3 (May 28, 2020). A WBO rejection incorporates the operating division's recommendation, which reflects "an enforcement decision of the operating division." IRM pts. 25.2.1.3(2) (May 28, 2020), 25.2.1.3.1 (Mar. 10, 2023), 25.2.1.3.5(1) (Mar. 10, 2023).

Court jurisdiction does not hinge on the WBO's choice to retain or transfer investigative authority.

*Second*, Amicus emphasizes that the operating division surveyed a taxpayer. But a taxpayer survey is simply a preliminary review used if the IRS decides "not to initiate an examination of the taxpayer." IRS Br. 27 n.4 (citing IRM pts. 4.10.2.5 (Sept. 29, 2022) & 4.10.2.5.1 (Sept. 9, 2019)); *see also* IRM pt. 4.10.2.1.4(1) (Sept. 9, 2019). In *Li*, a WBO classifier had similarly "reviewed . . . the target taxpayer's . . . tax returns," yet that was not deemed an administrative action. 22 F.4th at 1015. A survey is no more than preliminary and cursory review that falls short of an administrative action. Rather, it is the same type of conduct this Court previously found jurisdictionally immaterial in *Li*.

### 3.  *Section 7623(b)(4)'s Plain Text*

Amicus next argues that Meidinger's case falls within the plain text of 26 U.S.C. § 7623(b)(4). The argument works like this: Section 7623(b)(4) grants the Tax Court jurisdiction of "[a]ny determination regarding an award under paragraph (1), (2), or (3)." Amicus cites a variety of dictionaries and caselaw to show that the words "any," "determination" and "regarding" all have broad and expansive meaning. It notes that courts employ a clear statement rule before treating a statutory requirement as jurisdictional. *See, e.g.*, *Gonzalez v. Thaler*, 565 U.S. 134, 141–42 (2012). And Amicus highlights legislative history that suggests the Congress intended to allow whistleblowers to appeal award denials. Thus, Amicus contends, there is an overriding gravitational pull in favor of jurisdiction. *Li* carved out from this broad jurisdictional grant a narrow sliver of cases that are rejected at the "threshold first step." Once a whistleblower's claim advances past this first step, Amicus asserts, *Li*'s logic runs out and § 7623(b)(4) takes

over. That argument has no purchase. Statutory text, context and background principles of administrative law uniformly show that *Li*'s reach is more expansive than Amicus credits.

Under § 7623(b)(4), the Tax Court "shall have jurisdiction" over "[a]ny determination regarding an award under paragraph (1), (2), or (3)" of subsection (b). When read in isolation, this language seems to fit the expansive jurisdictional scope that Amicus presses. But "[s]tatutory language has meaning only in context." *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 415 (2005). That context supports a narrower read than the words might suggest when read "with blinders on." *Abramski v. United States*, 573 U.S. 169, 179 n.6 (2014); *cf. Mellouli v. Lynch*, 575 U.S. 798, 811–12 (2015) (cautioning that because the words "relating to," "extended to the furthest stretch of their indeterminacy, stop nowhere," courts should ascertain whether "context" supports "a narrower reading") (citation modified). The relevant context of a § 7623(b)(4) "determination" is its cross-references to paragraphs (1)–(3).

Paragraph (1) speaks to "[t]he *determination* of the amount of such award by the Whistleblower Office," which "shall depend upon the extent to which the individual substantially contributed to such action." 26 U.S.C. § 7623(b)(1) (emphasis added). Paragraph (2) references that same determination: "the Whistleblower Office['s] determin[ation]" that an "action described in paragraph (1)" is "based principally on" information other than that provided by the whistleblower, thereby warranting a reduction in the award. *Id.* § 7623(b)(2)(A). Finally, paragraph (3) addresses cases in which the WBO's "determin[ation] that the claim for an award under paragraph (1) or (2) is brought by an individual who planned and initiated the actions that led to the underpayment of tax" or was convicted of violating internal revenue laws. *Id.*

§ 7623(b)(3). The use of "identical words . . . in different parts of the same act" indicates that those words "are intended to have the same meaning." *Pereira v. Sessions*, 585 U.S. 198, 211 (2018). A "determination" under paragraph (4) thus refers to a discrete set of decisions:

> (i)  Any "determination of the amount of [the whistleblower's] award," 26 U.S.C. § 7623(b)(1), including any reductions in the award because the action was "based principally on disclosures" from sources other than the whistleblower, *id.* § 7623(b)(2)(A), or the whistleblower "planned and initiated the actions that led to" tax underpayment or was convicted of violating IRS laws, *id.* § 7623(b)(3); or

> (ii)  Any determination of "the extent to which the [whistleblower] substantially contributed to [the] action," *id.* § 7623(b)(1); or "the significance of the individual's information and the role of such individual . . . in contributing to such action," *id.* § 7623(b)(2)(A).

These determinations are all predicated on the IRS commencing an administrative or judicial action against a taxpayer based on information provided by the whistleblower. *See id.* § 7623(b)(1) ("If the Secretary *proceeds with any administrative or judicial action* described in subsection (a) . . . .") (emphasis added); *id.* § 7623(b)(2)(A) ("In the event the *action* described in paragraph (1) is . . . .") (emphasis added); *id.* § 7623(b)(3) (directing the WBO to reduce or deny the whistleblower's final award). Indeed, subsection (b) in its entirety applies only "with respect to *any action* . . . against any taxpayer" if "the proceeds in dispute exceed $2,000,000." *Id.*

§ 7623(b)(5) (emphasis added); *cf. Comm'r v. Zuch*, 605 U.S. __, 2025 WL 1657419, at *4 (2025) (interpreting "determination" in a parallel portion of the internal revenue law to refer to an "ultimate 'determination'" at the end of an administrative proceeding). As *Li* explained, the IRS's threshold rejection of a Form 211 does not fall into any of these three buckets. But there are actions other than a threshold rejection—including sending a Form 211 to an operating division—that do not constitute a § 7623(b) determination.

Other contextual clues drive this point home. All of the award determinations in paragraphs (1)–(3) are for the WBO to make in the first instance. The decision to commence an action, however, rests in the Secretary's unfettered discretion. *See id.* § 7623(b)(1) ("*If* the Secretary proceeds with any administrative or judicial action . . . .") (emphasis added); *Cohen v. Comm'r*, 139 T.C. 299, 302 (2012), *aff'd*, 550 F. App'x 10 (D.C. Cir. 2014) (holding that § 7623 does not "confer authority to direct the Commissioner to commence an administrative or judicial action"); *Meidinger*, 559 F. App'x at 6 (similarly acknowledging that the Tax Court cannot "direct the Secretary to proceed with an administrative or judicial action" or "compel the IRS to provide an explanation for its decision" not to act, as the Tax Court may only "grant relief if the IRS has initiated a proceeding against a taxpayer" (quotations omitted)). It would be anomalous to interpret § 7623(b)(4) to confer jurisdiction of a category of cases regarding which the same statute precludes any form of relief. *See Zuch*, 2025 WL 1657419, at *5 (treating the Tax Court's inability to provide relief in a category of cases as indicative of its lack of jurisdiction over those cases).

A more limited read, by contrast, accords with background rules of administrative law. The whistleblower statute allows private citizens to "bring [] matter[s] to the [IRS]'s attention

and request it to file" an action. *FTC v. Klesner*, 280 U.S. 19, 25 (1929) (addressing a similar whistleblower statute). "But a denial of his request is final," *id.*, because the IRS "alone is empowered to develop that enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy," *Moog Indus., Inc. v. FTC*, 355 U.S. 411, 413 (1958).

Our read reflects the broader principle that the "decision not to prosecute or enforce . . . is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985); *see* 5 U.S.C. § 701(a)(2) (exempting from judicial review actions "committed to agency discretion by law"); *Inv. Co. Inst. v. Fed. Deposit Ins. Corp.*, 728 F.2d 518, 526 (D.C. Cir. 1984) ("An agency's decision to refrain from an investigation or an enforcement action is generally unreviewable . . . .") (citation omitted); *Krug v. Comm'r*, 120 A.F.T.R.2d (RIA) 2017-6480 (D.C. Cir. 2017) (per curiam) ("The Commissioner has discretion whether to initiate an action against a taxpayer; the courts cannot compel the Commissioner to initiate such action . . . ."); *Shands*, 111 F.4th at 11 (Pillard, J., concurring) (explaining that "*Li* erected no novel or formidable obstacle to the Tax Court's jurisdiction" but simply reflected that it has "jurisdiction over appeals of award determinations—not exercises of non-enforcement discretion") (citation modified).

The IRS's decision to deny a claim often rests on the agency's decision not to bring an enforcement proceeding against a taxpayer. The statutory context and the broader *corpus juris* thus counsel against reading § 7623(b) to encompass an IRS determination not to proceed with a whistleblower's claim.

Amicus's other arguments fare no better. *First*, Amicus presses the clear statement rule governing the treatment of a statutory requirement as jurisdictional. But § 7623(b)(4)'s jurisdictional grant includes an express textual reference to the requirements of paragraphs (1)–(3), thus satisfying the clear statement rule's "high bar." *Harrow v. Dep't of Def.*, 601 U.S. 480, 484 (2024) (quotation omitted). Moreover, the "Tax Court is a court of limited jurisdiction" that may exercise only the jurisdiction expressly conferred on it by the Congress. *Comm'r v. McCoy*, 484 U.S. 3, 7 (1987) (per curiam); *accord Greene-Thapedi v. Comm'r*, 126 T.C. 1, 6 (2006); *Wilson v. Comm'r*, 805 F.3d 316, 319–20 (D.C. Cir. 2015). As such, its jurisdiction is "strictly construed." *Bowen v. Massachusetts*, 487 U.S. 879, 908 n.46 (1988).

*Second*, Amicus cites a pair of staff technical reports on the 2006 amendments, which state that a whistleblower may "appeal the amount or a denial of an award determination." Joint Committee on Taxation, *Technical Explanation of H.R. 6408, The "Tax Relief and Health Care Act of 2006," as Introduced in the House on December 7, 2006 (JCX-50-06)* 89 (Dec. 7, 2006); Joint Committee on Taxation, *General Explanation of Tax Legislation Enacted in the 109th Congress (JCS-1-07)* 745–46 (Jan. 17, 2007) (same). The latter report is a post-enactment "Blue Book [] prepared by the staff of the Joint Committee on Taxation as commentaries on [the] recently passed tax law[]." *United States v. Woods*, 571 U.S. 31, 47 (2013). Such post-enactment reports are "not a legitimate tool of statutory interpretation." *Id.* at 48 (quotation omitted). As to the earlier report, the quoted language may simply abbreviate its description of the award denials contemplated by § 7623(b)(3).

TAF notes that the staff report's language does not limit itself to the narrow circumstance of a § 7623(b)(3) denial, but

the parties' debate over how to parse an isolated line plucked from a committee report is precisely why courts have abandoned their rote use of legislative history. "[L]egislative history is not the law" and, insofar as it is ever a proper source for divining congressional intent, it is only to *resolve* an ambiguity, not to *create* one by "muddy[ing] clear statutory language." *Azar v. Allina Health Servs.*, 587 U.S. 566, 579 (2019) (quotations omitted); *see Int'l Bhd. of Elec. Workers, Loc. Union No. 474 v. N.L.R.B.*, 814 F.2d 697, 700 (D.C. Cir. 1987) ("[C]ourts have no authority to *enforce* alleged principles gleaned *solely* from legislative history that has no statutory reference point.").

*Third*, and finally, Amicus claims that we previously held that "a letter that 'notifies a whistleblower of the Whistleblower Office's final decision on his claim' is a 'determination' under section 7623." Amicus Br. 21 (internal alterations omitted) (quoting *Myers*, 928 F.3d at 1033). But *Li* took notice of this language from *Myers* and explained that "[u]pon review . . . this statement is not a holding" and "does not bind our decision" on § 7623(b)(4)'s scope. 22 F.4th at 1017–18. It likewise does not bind our decision here.

In sum, § 7623(b)(4) requires that the IRS first proceed with an administrative or judicial action against a taxpayer before the Tax Court can exercise jurisdiction. The agency's decision "not to pursue the [whistleblower's] information," S.A.1, whether labeled a rejection or a denial, and whether rendered by the WBO or an operating division, is emphatically not a § 7623(b) action. Without such action, there is no "determination regarding an award under paragraph (1), (2), or (3)," and thus nothing that can be appealed. 26 U.S.C. § 7623(b)(4). This accords not only with the text in context but with ordinary rules of prosecutorial discretion. As we explained in *Li*, and reemphasize today, the IRS must first

proceed "with an action against . . . [a] taxpayer" before the Tax Court can exercise jurisdiction. 22 F.4th at 1017. Rejecting a Form 211 at the threshold step means the IRS has not taken such an action. The only difference between *Li* and this case is that the WBO sent the Form 211 to an operating division—which deemed the form conclusory—before the WBO itself concluded that Meidinger's Form 211 was "vague and speculative" and should be rejected. *Id.* Nothing in the text of § 7623(b)(4), *Li*'s holding or common sense suggests that intra-agency transfers should lead to a different outcome.

\* \* \*

Amicus's various arguments all represent variations on the same theme: limiting *Li*'s holding. If a whistleblower can show that his form has advanced even one paper-shuffle more than Li's, Tax Court jurisdiction arises. But the phrase "threshold review" appears nowhere in statutory text. Nor did *Li* rest on so flimsy a foundation. At bottom, Amicus's line-drawing exposes its primary theory of this case: *Li* was wrongly decided and should be overruled. That argument is addressed below.

## B.   We Decline Amicus's Invitation to Revisit *Li*

Amicus argues in the alternative that *Li* was wrongly decided and should be overruled. Amicus acknowledges that a panel lacks the power to overturn Circuit precedent, and so asks that we request an "*en banc* hearing and disposition of [this] appeal in lieu of issuing a panel decision." CADC, *Policy Statement on En Banc Endorsement of Panel Decisions* 3 (Jan. 17, 1996).

It is a fundamental maxim that "we are . . . bound to follow circuit precedent absent contrary authority from an en banc court or the Supreme Court." *United States v. Carson*, 455 F.3d 336, 384 n.43 (D.C. Cir. 2006) (per curiam). "[T]he rule

of law demands that . . . [d]eparture from precedent" be the exception, *Randall v. Sorrell*, 548 U.S. 230, 244 (2006) (Breyer, J., plurality opinion) (quoting *Arizona v. Rumsey*, 467 U.S. 203, 212 (1984)), and only if there is "special justification" beyond the belief "that the precedent was wrongly decided," *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 456 (2015). *Stare decisis* is at its zenith "[i]n matters of statutory interpretation," *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 260 (2008) (Roberts, C.J., concurring), regarding which the "Congress remains free to alter what we have done," *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 274 (2014) (quotations omitted). This Court has described the "range of circumstances" in which a "statutory precedent" should be overturned as "narrow." *United States v. Burwell*, 690 F.3d 500, 504 (D.C. Cir. 2012) (*en banc*). These circumscribed circumstances include an "intervening development of the law," a "conceptual underpinning[ of] the prior decision" has been "removed or weakened," a precedent has proved "detriment[al] to coherence and consistency in the law" or an interpretation has been refuted persuasively by "other circuits." *Id.* (quotations removed). Even then, *en banc* review serves only "two purposes: to ensure the consistency of our caselaw and to resolve issues of exceptional importance." *Id.* at 517 (Henderson, J., concurring) (citing Fed. R. App. P. 35(a)).

Amicus does not come close to scaling this high wall. It terms *Li* "unworkable" because "[n]either *Li* nor *Lissack* delineates the precise line between an unreviewable threshold rejection and a reviewable determination, leaving a large swath of IRS actions on uncertain jurisdictional grounds." Amicus Br. 33 (citation modified). What Amicus decries as imprecision is no more than judicial minimalism: "if it is not necessary to decide more, it is necessary not to decide more." *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004)

(Roberts, J., concurring). *Li* and *Lissack* wisely chose not to reach out and decide issues not before them. "[A]s is true with so many legal standards for judging concrete cases," the limits must sometimes be "marked out through case-by-case adjudication." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503 (1984). *Li* was decided only three years ago. *Lissack* is of even more recent vintage.

Amicus notes that a whistleblower is forced into a "particularly opaque" process because the IRS may not provide "the full administrative record detailing how the IRS treated [a] claim." Amicus Br. 34. If true, that provides a reason for the IRS to improve its bookkeeping, not for this Court to revisit its precedent. In any event, the jurisdictional line drawn by *Li* and its progeny is not a particularly difficult one to trace. As *Shands* explained, whether the IRS has proceeded with an administrative or judicial action "does not turn on" the IRS's internal claims processing procedures but "on what the IRS *did*." 111 F.4th at 9. It is thus irrelevant "whether the IRS labeled its decision a 'rejection' or a 'denial'" or whether the IRS disposed of a claim *via* the WBO or an operating division. *Id.* Jurisdiction vests once the IRS chooses to act against a taxpayer based on information alleged by a whistleblower. That is a readily administrable line to follow. More importantly, it is the line that the Congress chose to set.

## C. Kennedy's Petition

The foregoing analysis deprives the Tax Court—and in turn, this Court—of jurisdiction of Meidinger's claims and Kennedy's first two claims. As with Meidinger, Kennedy's claims one and two were forwarded to an IRS operating division, which then took no administrative or judicial action on either claim. Claim one languished in the agency because the divisions could not resolve which, if any, should investigate

the claim. The IRS took no action on claim two because a cursory investigation revealed that the accused taxpayer was a defunct corporation. Unlike with Meidinger, the IRS described Kennedy's final rejection letter as a "denial" rather than a "rejection." But as explained above, there is no jurisdictional import to that difference in labels. There are no material facts to differentiate Meidinger's case from Kennedy's first two claims. The Tax Court thus lacked jurisdiction to entertain these two claims.

As to Kennedy's final claim, the IRS proceeded with an administrative action: it examined (i.e., audited) the accused taxpayer. This is precisely the conduct that *Lissack* found sufficient to confer jurisdiction. *See Lissack*, 125 F.4th at 255 ("The fact that the IRS conducted an examination here suffices to distinguish Lissack's case from *Li*."); *see also Shands*, 111 F.4th at 9 (suggesting that if a taxpayer "faced an audit that was triggered by [a whistleblower's] disclosure," that could suffice for jurisdiction). Because there was an administrative action based on Kennedy's information, the Tax Court properly exercised jurisdiction of Kennedy's third claim.

The Tax Court also properly rejected Kennedy's third claim on the merits. Following its audit, the IRS made no change to the taxpayer's return and collected no proceeds. Kennedy alleges that "proceeds were collected" but the portion of the record he cites is a pre-audit form of the taxpayer that recounts nothing of the sort. Elsewhere, the record indicates that no proceeds were collected, as the IRS asserted in its internal correspondence, in the proceeding below and on appeal, and as the Tax Court so held. Because the IRS collected no proceeds against the accused taxpayer, the Tax Court properly held that Kennedy was not entitled to any award as a matter of law.

26

* * *

For the foregoing reasons, we dismiss Meidinger's appeal for lack of jurisdiction and dismiss claims one and two of Kennedy's appeal for the same jurisdictional deficiency. We affirm the Tax Court's rejection of Kennedy's third claim on the merits.

*So ordered.*